UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROCKY MOUNTAIN MEDICAL MANAGEMENT, LLC and TERRY ELQUIST, | Case No. 4:13-cv-00064-EJL |
| Plaintiffs, | MEMORANDUM DECISION AND ORDER |
| vs. | |
| LHP HOSPITAL GROUP, INC.; PORTNEUF HEALTH CARE FOUNDATION; LHP MANAGEMENT SERVICES, LLC; POCATELLO HOSPITAL, LLC; POCATELLO HEALTH SYSTEM, LLC; POCATELLO HEALTH SERVICES, LLC; LHP POCATELLO, LLC; LHP HOSPITAL PARTNERS, INC.; NORMAN STEPHENS and JOHN ABREU, | |
| Defendants. | |

Before the Court is a Motion to Quash Subpoena or for Protective Order ("Motion to Quash") by non-party Skyline Surgery Center, LLC (Dkt. 7.)  This case involves allegations by Plaintiffs Terry Elquist ("Elquist") and Rocky Mountain Medical Management, LLC, (collectively referred to hereinafter as "Plaintiffs") against Defendants LHP Hospital Group, Inc., Norman Stephens and John Abreu (collectively referred to hereinafter as "Defendants").  Plaintiffs allege

MEMORANDUM DECISION AND ORDER - 1

Defendants interfered with their prospective economic advantage in developing a competing surgery center in Pocatello, Idaho.

Non-party Skyline Surgery Center, LLC ("Skyline") opened an expanded surgery center in Pocatello in early 2013.  Defendants believe the Skyline surgery center expansion project is the surgery center Plaintiffs have accused Defendants of unlawfully delaying.  Defendants accordingly served Skyline with a subpoena, seeking documents that would shed light on Elquist's apparent claim that he suffered economic losses as a result of Defendants' alleged efforts to block or delay the Skyline expansion.  Skyline filed a Motion to quash the subpoena.

The Motion to Quash has been briefed and is ripe for review.  The Court finds that the facts and legal arguments are adequately presented in the briefs and record.  Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.  For the reasons stated below, the Court will **GRANT** Skyline's Motion to Quash in part, and will **DENY** the Motion in part.

# BACKGROUND[1]

In December 2012, before this case was removed to federal court, Defendants served Skyline with a subpoena to discover twenty-one categories of documents Defendants claim are relevant to Elquist's role and financial interest in Skyline's expansion project, as well as regarding Elquist's notion that the expansion project was delayed as a result of Defendants' actions.  (Dkt. 38, p. 1.)  Skyline promptly moved to quash the subpoena, arguing, *inter alia*, that it was overbroad, posed an undue burden, and sought confidential commercial information.  While awaiting the hearing date Skyline had secured in state court, however, Defendants and Skyline engaged in discussions regarding the scope of the subpoena.  (Dkt. 38, p. 7.)  Skyline ultimately agreed, in return for payment of its claimed production costs, to produce documents in response to each of Defendants' document requests except those in response to request 1 (Skyline's business plan), request 12 (Skyline's operating agreement), request 13 (all

---

[1] The facts of this case are provided in this Court's Memorandum Decision and Order granting in part and denying in part Defendants' Motion to Dismiss (Dkt. 35), *Rocky Mountain Medical Management, LLC v. LHP Hospital Group, Inc., et. al.*, 2013 WL 5469890 (D. Idaho 2013) and will not be repeated here.  Plaintiffs' Second Amended Complaint alleged violation of state and federal antitrust laws, tortious interference with contract and tortious interference with prospective economic advantage.  (Dkt. 1-71.)  Following this Court's Order granting in part Defendants' Motion to Dismiss, only the tortious interference with prospective economic advantage claim remains.

documents identifying Skyline's members) and request 14 (all documents identifying Skyline's officers).[2]  (*Id.*)

After further discussion, Defendants and Skyline reached an agreement under which, in exchange for the claimed production cost of $3,000.00, Skyline would produce all the requested documents, with the exception of documents in response to request numbers 1, 12, 13, and 14.  (*Id.*, p. 8.)  Then, after reviewing Skyline's initial document production, Defendants would decide whether to press for documents responsive to the latter four requests.  (*Id.*)  The process of reaching this agreement began before this action's removal to federal court, and continued after removal, aided by two court-approved extensions of Defendants' deadline for responding to Skyline's Motion to Quash.

Skyline produced 391 pages of documents on February 28, 2013, in return for the agreed upon payment of $3,000.  (*Id.*)  The documents indicated that Elquist was involved in planning Skyline's surgery center and that Elquist serves an administrative function there, but are not conclusive as to whether Elquist has an ownership interest in Skyline.  (*Id.*)  Defendants contend that documents

---

[2] Skyline also objected to disclosing the names of doctors who have privileges at its surgery center and to disclosure of Skyline's financial information.  (*Id.*)  Defendants maintain these objections are immaterial, as Defendants do not seek the names of doctors with privileges at Skyline, nor request any financial information of Skyline (with the exception of financial information pertaining to Elquist himself, and not to that of Skyline).  (*Id.* at p. 8.)

responsive to requests 1, 12, 13 and 14 would be conclusive on this point, and are relevant to Defendants' defense against Elquist's interference claims. Now that Defendants' Motion to Dismiss Plaintiffs' complaint has been decided, and Elquist's tortious interference with prospective economic advantage claim has survived, Defendants seek full performance of the subpoena.

## ANALYSIS

As this case has been removed to federal court, the Federal Rules of Civil Procedure are controlling. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 437-38 (1974) ("[t]he Federal Rules of Civil Procedure, like other provisions of federal law, govern the mode of proceedings in federal court after removal."). Defendants' subpoena to Skyline should thus be treated as a federal subpoena, even though it was issued by the state court. *Carvalho v. Equifax Info. Servs*., LLC, 629 F.3d 876, 887 (9th Cir. 2010) (after removal, district courts must "treat[] everything that occurred in the state court as if it had taken place in federal court.") (quotation omitted).

Federal Rule of Civil Procedure 45(c)(3) provides a court *must* quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden." F.R.C.P. 45(c)(3)(A)(iii) and (iv) (emphasis added). Further, to protect a person subject to or affected by a subpoena, a court *may* quash a subpoena if it requires

"disclosing a trade secret or other confidential research, development, or commercial information." F.R.C.P. 45(c)(3)(B)(i) (emphasis added). The burden of proving that a subpoena imposes an undue burden or requires disclosure of confidential information is on the person seeking to have it quashed. *9A Fed. Prac. & Proc. Civ*. § 2459 (3d ed. 2013); *see also Green v. Baca*, 226 F.R.D. 624, 653 (C.D. Cal. 2005) (the burden of persuasion in a motion to quash a subpoena issued in the course of civil litigation is borne by the movant); *Diamond State Ins. Co. v. Rebel Oil Co*., 157 F.R.D. 691, 698-700 (D. Nev. 1994). However, the party issuing the subpoena must demonstrate, in turn, that the information sought is relevant and material to the allegations and claims at issue in the proceedings. *Green*, 226 F.R.D. at 654; *see also United States v. American Optical Co.*, 39 F.R.D. 580, 583 (N.D. Cal. 1966) (a party seeking production must show "good cause,"—that is, that the requested documents are necessary to establish a claim or defense, or that denial of production would be prejudicial). In all controverted cases, it is up to the court to strike a balance among the degree of relevance of the requested material, the severity of the burden on the subpoenaed person or entity, and the utility of the protective mechanisms provided by the Federal Rules. *9A Fed. Prac. & Proc. Civ*. § 2459 (3d ed. 2013).

When Skyline filed its Motion to Quash, it had not responded to Defendants' subpoena at all and was seeking to have the subpoena quashed in its entirety.

MEMORANDUM DECISION AND ORDER - 6

Later, however, Skyline agreed to produce all of the documents requested in the

subpoena except those responsive to requests 1, 12, 13 and 14.  Skyline's Motion

to Quash with respect to requests 2-11 and 15-21 is thus moot, as Skyline has

already produced the documents in response to such requests, and is accordingly

**DENIED**.

Because Skyline has produced documents in response to all of Defendants'

requests except for requests 1, 12, 13 and 14, the Court must consider whether

requiring Skyline to produce such documents would impose an undue burden.  As

mentioned, request 1 seeks Skyline's business plan,[3] and request 12 seeks

Skyline's operating agreement.  (Dkt. 38, pp. 5-6.)  Defendants have agreed to

deem request 13 (all documents identifying Skyline's members) satisfied by

Skyline's production of its operating agreement, provided that the operating

agreement identifies Skyline's members.  Defendants have also agreed to deem

request 14 (all other documents identifying Skyline's officers) satisfied by the

production of documents identifying Skyline's officers from 2011 to the present.

(*Id*., p. 12.)  The Court's inquiry is thus limited to whether requiring production of

Skyline's business plan, operating agreement, and documents identifying its

---

[3] Defendants have agreed to limit the scope of this request to Skyline's business plans
     pertaining to the expansion of Skyline's surgery center that opened in 2013.  (Dkt. 38,
     p. 10.)

officers from 2011 to the present would impose an undue burden on Skyline.  In
determining whether an undue burden exists the court may consider: (1) the
relevance of the information requested; (2) the need of the party requesting the
documents; (3) the breadth of the discovery request; (4) the time period covered by
the request; (5) the particularity with which the requesting party has described the
requested documents; and (6) the burden imposed.  *Precourt v. Fairbank
Reconstruction Corp.*, 280 F.R.D. 462, 467 (D.S.D. 2011); *WM High Yield v.
O'Hanlon*, 460 F.Supp.2d 891, 895 (S.D. Ind.  2006).

     1.  *Relevance of information requested and need of requesting party*

     Skyline suggests "it is difficult to imagine how a competitor's business plan
. . . operating agreement, [and] names of officers and directors have any relevance
to plaintiffs' claims or defendants' defenses [or] . . . has a nexus to this nonparty."
(Dkt. 7-1, p. 4.)  Skyline also condemns Defendants' requests as a "fishing
expedition into the waters of a competitor [.]"  (*Id.*, p. 2.)  Defendants respond that
Skyline's business plan and operating agreement are relevant for several reasons:
because they may describe Elquist's role in the project, and whether he was
regarded as a material participant; because they may address Elquist's notion that
Defendants posed a threat to the project and tried to stop or delay it; because they
may discuss Skyline's approach to obtaining anesthesia coverage, which is relevant
because Elquist appears to claim Skyline's surgery center expansion was delayed
because Defendants would not let their anesthesia provider work with Skyline;

MEMORANDUM DECISION AND ORDER - 8

because the business plan may contain a timeline for expansion that could shed light on whether the project sustained any delay as a result of Defendants' action; because the business plan and operating agreement may identify other individuals involved in the expansion project, who could also be potential sources of potential discoverable information; and because, if the business plan and/or operating agreement made no mention of Elquist at all, such omission may suggest Elquist's contribution to the expansion project was minimal.  Defendants also suggest Skyline's operating agreement is relevant because it would reveal whether Elquist is a Skyline member, which is germane to whether Skyline's delay in opening caused Elquist to suffer any recoverable damages, and because the operating agreement may contain information about members' capital contributions, which may be in amounts large enough to establish that Elquist was never in a financial position to establish a surgery center himself.  Finally, Defendants contend documents identifying Skyline's officers are relevant because whether or not Elquist is an officer is related to his ability to obtain damages, and because Skyline's officers are potential sources of discoverable information about Elquist's claim that Skyline's expansion was delayed by Defendants.

At this stage in the proceedings, it has not been established that Skyline is the surgery center with which Elquist claims Defendants unlawfully interfered.  If Skyline is not the prospective economic advantage Elquist claims Defendants

delayed, Skyline's business plan, operating agreement and officers are irrelevant to this case.  Further, if Skyline is the surgery center with which Elquist claims Defendants unlawfully interfered, Defendants need for identification of Skyline's officers, as well as for Skyline's business plan and operating agreement, is undercut by Defendants' ability to obtain the information sought from Elquist.

A court may prohibit a party from obtaining discovery from a non-party if that same information is available from another party to the litigation.  *Bada Co. v. Montgomery Ward & Co.*, 32 F.R.D. 208, 209-210 (S.D. Cal. 1963) (non-parties should not be burdened with the annoyance and expense of producing the documents sought unless the requesting party is unable to discover them from a party); *Precourt*, 280 F.R.D. at 467 ("If the party seeking information can easily obtain the same information without burdening the non-party, the court will quash the subpoena."); *Arthrex, Inc. v. Parcus Medical, LLC*, 2011 WL 6415540, at *6 (S.D. Ind. 2011) ("A party's ability to obtain documents from a source with which it is litigating is a good reason to forbid it from burdening a non-party with production of those same requests."); *Brown v. City of Syracuse*, 648 F.Supp.2d 461, 466 (N.D.N.Y. 2009) (when balancing hardships between requesting party and nonparty, court should consider whether there are other sources for obtaining the material).  Here Defendants can obtain most of the information sought from Skyline by deposing Elquist.  Specifically, Elquist can attest to whether he is a

member or officer of Skyline.  Elquist can also identify the amount of capital contribution, if any, he made to Skyline, and is perhaps the best source of information as to his role in the expansion project.  As plaintiff, Elquist is also required to prove that Defendants delayed or threatened the Skyline project. Defendants need not obtain Skyline's confidential business information in order to acquire the evidence Elquist will be required to present to establish Defendants unlawfully interfered with the Skyline expansion.

Defendants can also obtain evidence regarding Skyline's approach to anesthesia coverage, as well as Skyline's perception of Elquist's role in the expansion project, and whether such role was material, by deposing a representative for Skyline.  A representative of Skyline could also provide Defendants with potential sources of other relevant information.  The Court is loath to require a non-party competitor to produce potentially confidential information where such information is readily obtainable from another source.

Skyline has also already offered to provide Defendants with information regarding Skyline's perception of Defendants' alleged interference with Skyline's expansion project.  Specifically, in exchange for relief from Defendants' subpoena, Skyline proposed it would sign an affidavit stating that Skyline has no evidence, and no Skyline member alleges or has information to suggest, that Defendants delayed the opening of Skyline.  (Dkt. 38-8.)  Defendants rejected this offer,

stating such an affidavit would not negate the need for further discovery.  (*Id.*)
Defendants thus could have obtained information regarding their alleged
interference with Skyline, or lack thereof, without requiring Skyline to produce
sensitive information.   In short, the Court finds the potential irrelevance of the
Skyline's information and Defendants ability to obtain relevant information
elsewhere weigh against requiring Skyline identify its officers and to produce its
business plan and operating agreement.  *United States v. Serta Associates, Inc*., 29
F.R.D. 136, 138 (N.D. Ill. 1961) (quashing subpoena where court was not
convinced of the relevancy of the documents sought and because court "would be
most reluctant to force a non-party competitor to divulge confidential
information.").

  2.  *Breadth, particularity and time period of request*
  Requests 1 and 12 seek specific documents (Skyline's business plan and
operating agreement), and Defendants have agreed to deem request 13 satisfied by
production of request 12.  Request 14 is also limited in time period and scope, as it
seeks only documents identifying Skyline's officers from 2011 to the present.  As
requests 1,12, 13 and 14 are sufficiently specific, particular, and narrow, the third,
fourth and fifth factors weigh in favor of requiring production.

*3. Burden to Skyline*

In considering whether requiring Skyline to respond to requests 1, 12, 13 and 14 would unduly burden Skyline, Skyline's status as a nonparty is significant. When deciding discovery disputes, concern for the burden upon non-parties carries "special weight." *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999) (quotation omitted); *see also Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988) ("Of significance . . . in balancing the competing hardships [between disclosure and nondisclosure of the discovery sought] is [an entity's] status as a nonparty to [the] litigation. Under the authorities, this factor is significant in determining whether compliance with a discovery demand would constitute an undue burden.") (quotation and citation omitted)*; Jack Frost Laboratories Inc. v. Physicians & Nurses Mfg. Corp.*, 1994 WL 9690, at *2 (S.D.N.Y. 1994) ("The most obvious burden is borne by the non-party witness, and we are instructed to be particularly sensitive to any prejudice to non-litigants drawn against their will into the legal disputes of others."); *In re Candor Diamond Corp.*, 26 B.R. 847, 849 (Bkrtcy. N.Y. 1983) ("Restrictions on discovery may be broader where a non-party is the target of discovery to protect such third parties from unnecessary harassment, inconvenience, expense or disclosure of confidential information.") (citation omitted).

Of course, Skyline's non-party status is not alone sufficient to bar the discovery Defendants seek.  *See, e.g.*, *Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987).  However, the Court gives weight to Skyline's non-party status when assessing Defendants' need for obtaining identification of Skyline's officers and production of Skyline's business plan and operating agreement.  *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993) ("Although Rule 26(b) applies equally to discovery of nonparties, the fact of nonparty status may be considered by the court in weighing the burdens imposed in the circumstances."); *Dart Industries Co., Inc. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) (discovery restrictions may be broader when a non-party is the target of discovery); *Travelers Indemnity Co. v. Metropolitan Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005) (courts give special weight to the burden on non-parties of producing documents to parties involved in litigation.); *Echostar Communications Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 394 (D. Colo. 1998) ("courts are required to balance the needs for discovery against the burdens imposed when parties are ordered to produce information or materials, and the status of a person or entity as a non-party is a factor which weighs against disclosure.").

Although Skyline has not established the confidentiality of the information

Defendants seek,[4] business plans and operating agreements are not public

information, are generally prepared at significant expense, and are often the subject

of confidentiality provisions in protective orders and non-disclosure agreements.  It

is understandable why Skyline would want to protect the identity of its officers, as

well as its business plan and operating agreement from Defendants, a competing

surgery center, and the only other surgical center in Pocatello, Idaho.[5]  *See, e.g.,*

*Echostar Communications Corp.*, 180 F.R.D. at 395 ("Courts have presumed that

disclosure to a competitor is more harmful than disclosure to a noncompetitor.")

---

[4] Movants seeking to quash a subpoena as seeking confidential information are required
    to establish the information sought is confidential, and that disclosure of such
    information would result in injury.  *Diamond State Ins. Co.*, 157 F.R.D. at 697.
    Skyline's Motion to Quash does not detail such information.  However, the Court
    does not quash the subpoena on the basis of the confidentiality of the documents
    requested, but instead finds that the balance of factors supports quashing the
    subpoena.

[5] Defendants suggest that any confidentiality concerns Skyline may have are addressed
    by the protective order currently on file in this action.  However, there is "constant
    danger [of dissemination to third parties] inherent in disclosure of confidential
    information pursuant to a protective order.  Therefore, the party requesting disclosure
    must make a strong showing of need, especially when confidential information from a
    non-party is sought."  *Litton Industries Inc. v. Chesapeake & Ohio Railway Co.*, 129
    F.R.D. 528, 531 (E.D. Wis. 1990).  In light of the Court's finding with respect to
    Defendants' ability to obtain much of the information it seeks from a party to this
    litigation, and without use of Skyline's potentially confidential business plan and
    operating agreement, Defendants have not established a need sufficient to justify
    requiring disclosure of the aforementioned documents, even pursuant to a protective
    order.

(internal quotation and citation omitted); *Premium Service Corp. v. Sperry &
Hutchinson Co*., 511 F.2d 225, 229 (9th Cir. 1975) ("no company, having a choice,
would permit another company to go on a fishing expedition through its records.");
*Hecht v. Pro-Football, Inc*., 46 F.R.D. 605, 607 (D.D.C. 1969) (recognizing non-
party's right to privacy in its financial affairs).

Finally, the Court is mindful that Skyline has already produced a significant
amount of documents in response to Defendants' requests.  For example, Skyline
has provided documents relating to Skyline's planning for opening a surgery
center; all communications between Skyline and Plaintiffs with respect to the
surgery center Skyline opened; all communications between Skyline and
Anesthesia Associates of Pocatello, P.A. ("AAPPA") regarding AAPPA's
involvement in Skyline's surgery center; all documents relating to any role
(whether as an investor, member, officer, employee, service provider, contractor or
otherwise) Elquist has ever proposed to have, had, or currently has with respect to
Skyline's surgery center; all documents relating to any delays Skyline experienced
in opening the surgery center and the reasons for such delays; all documents
relating to Elquist's ownership interest in Skyline's surgery center;  and all
documents relating to any payments or other consideration given by Elquist to
Skyline for any ownership in Skyline's surgery center.  Skyline has thus already
provided documents responsive to each of Defendants' arguments regarding the

relevancy of Skyline's business plan and operating agreement.  *See supra*, section 1.  District courts have discretion to limit discovery where, as here, the discovery sought is unreasonably cumulative or duplicative.  Fed.R.Civ.Proc. 26(b)(2)(C); *Diamond State Ins. Co.*, 157 F.R.D. at 697; *Shoen v. Shoen*, 5 F.3d 1289, 1299 (9th Cir. 2993 (concurring opinion).

In light of Defendants' ability to obtain the information it seeks from plaintiff and/or through non-confidential sources, as well as the potential irrelevance of Skyline's documents, Skyline's non-party status, the potential confidentiality of the documents requested, and the significant production Skyline has already provided, the Court finds the sixth factor, or undue burden, weighs in favor of quashing the remaining requests in Defendants' subpoena to Skyline.  A court "must" quash a subpoena that subjects a person to undue burden.  F.R.C.P. 45(c)(3)(A)(iv).  The Court accordingly **GRANTS** Skyline's Motion to Quash document requests 1, 12, 13 and 14.

Therefore, it is **ORDERED** that:

1.   Non-party Skyline's Motion to Quash (Dkt. 7) is **GRANTED IN PART** and **DENIED IN PART** as follows:

a.   Skyline has already responded to Defendants' document requests 2-11 and 15-21.  Skyline's Motion to Quash such requests is accordingly moot and is therefore **DENIED**.

    b.   Skyline's Motion to Quash Defendants' document requests 1, 12, 13 and 14 is **GRANTED**.

DATED: December 9, 2013

Edward J. Lodge
United States District Judge